**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**KRISTEN LEE PLANT**                                                    **PLAINTIFF**


**VS.**                            **No. 4:25-cv-01118 PSH**


**COMMISSIONER,**
**Social Security Administration**                          **DEFENDANT**


**ORDER**


Plaintiff Kristen Lee Plant ("Plant") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Commissioner") to deny her claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plant contends the Administrative Law Judge ("ALJ") erred in three ways: (1) by failing to evaluate her migraine headaches and left femoral nerve compression impairments as required by the regulations and the Commissioner's policy; (2) by failing to properly evaluate the agency physicians' opinions regarding mental impairments; and (3) by failing to properly evaluate her severe impairments of bladder spasms and vesicovaginal fistula.

The Commissioner states substantial evidence supports the ALJ's decision that Plant was not disabled during the relevant period. For the reasons set forth

1

below, the Court agrees, affirms the ALJ's decision, and dismisses the case.

The parties ably summarized the medical records and the testimony given at the video administrative hearing, which was conducted on October 8, 2024. (Tr. 39-68). The ALJ's decision was issued on November 4, 2024. (Tr. 15-31). The Court has carefully reviewed the record to determine whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from December 1, 2015, the alleged onset date, through November 4, 2024, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by the ALJ, Plant stated she was 47 years old and last worked in 2014. Plant, who lived with her parents, possessed a driver's license and could manage driving without issues "for short distances around town" or "for like an hour or more." (Tr. 44). Longer drives were limited by "interstitial cystitis and really bad bladder spasms." *Id.* Plant completed four or more years of college and could read and write, although writing for more than 10-15 minutes was difficult due to radiculopathy in her right arm. Plant described bladder problems as the main reason she was unable to work. She also cited a hole in her bladder causing leakage, neck pain and radiculopathy, osteoarthritis in her lower back and hips, COVID brain fog, and radiating pain from her hip into her leg. Plant acknowledged

2

urinary incontinence and recurring urinary tract infections (two in the previous six months) as issues. The incontinence occurs "consistently pretty much all the time." (Tr. 47). Plant addressed the incontinence by wearing bladder pads and, at times, wearing Depends. Plant estimated she changed pads every two to three hours, and these problems resulted in 20 to 30 daily restroom trips. This problem has been the same since 2019, and Plant indicated a procedure (the fourth attempt) was scheduled in two weeks to fix the problem.

When questioned by her attorney, Plant provided a history of her urinary issues, which she said started in 2015 when she had a hysterectomy and the surgeon punctured her bladder. Subsequent surgeries to repair the hole have been unsuccessful, according to Plant. She elaborated on the need to lie down after riding in the car for an hour, describing the bladder spasms as "really bad," requiring her to curl up in a ball to ease the pain. (Tr. 50). Additionally, Plant estimated she could sit in a chair for maybe 20 minutes before numbness in her legs necessitates moving around. The numbness in her legs started in 2021 and "it's just gotten continually worse." (Tr. 51).

Plant also noted ongoing issues with low blood pressure, related to medication she takes for a heart arrythmia. The blood pressure problems cause her to "pass out frequently," a problem which has existed since 2019. (Tr. 52). Plant also described lower back treatments, consisting of epidural steroid injections and "nerve burning"

to treat sciatica, dating prior to 2019. According to Plant, her back pain interferes with sitting, standing, walking for longer than ten minutes, and lifting, pushing, or pulling more than two to three pounds. She stated the lifting worsens her incontinence and spasms and causes pain. The "nerve burning" treatment included burning of her ureters and the placing of stents to keep them open. The stents were subsequently removed, "but they still cause and add to the pain I experience." (Tr. 52).

The ALJ followed up, asking Plant if there were any issues raising her arms. Plant described burning pain when raising her right arm, and numbness and neck pain when she raises either arm.

Michael Stinson ("Stinson"), a vocational expert, testified. The ALJ asked Stinson to consider a hypothetical worker of Plant's age, education, and experience, who could work at a sedentary level with the following restrictions: can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl; and must avoid more than occasional exposure to atmospheric conditions and hazards as defined in the *Selected Characteristics of Occupations*. Stinson testified that such a hypothetical worker could perform the jobs of dowel inspector, final assembler, call-out operator (a telephone job), nut sorter, and lens inserter.

The ALJ posed a second hypothetical question to Stinson, adding the following restrictions to those included in the first question:  must be able to wear protective undergarments; must work in a facility with ready access to a bathroom; would require up to two unscheduled five-minute bathroom breaks during the workday; can frequently handle and finger with the right upper extremity; and can occasionally reach overhead with the bilateral upper extremities.  Such a worker, according to Stinson, could perform all the jobs listed in response to the first hypothetical question.

A third hypothetical question was posed, incorporating the restrictions of the second hypothetical and adding that the worker would have to stand and stretch for one minute after thirty minutes of work.  Stinson stated the worker could perform all the jobs previously identified if the worker kept working while standing and stretching.  If the worker stopped work duties when standing and stretching that would eliminate the nut sorter job, according to Stinson.  Stinson further testified that a worker needing breaks of six minutes per hour, or being absent two or more days a month, would not be able to perform any jobs.  (Tr. 55-65).

Plant concluded the hearing by reiterating that her bladder issues arrive urgently and that she may need to stay in the restroom for ten minutes.  She also testified her COVID brain fog had worsened in the previous two years, causing memory lapses (she stated she forgot her address for two weeks) and asthma.

Finally, she stated any job requiring use of her right hand would be a problem because "I'm going to drop things." (Tr. 66).

*The ALJ's Decision*

In his November 4, 2024, decision the ALJ determined Plant had the following severe impairments: degenerative joint disease and degenerative disc disease of the lumbar spine, asthma, status post anterior cervical fusion and discectomy, and vesicovaginal fistula with bladder spasms. The ALJ found Plant's mental impairment of anxiety did not cause more than minimal limitation in her ability to perform basic mental work activities. Therefore, her mental impairment was deemed non-severe. As part of this analysis the ALJ considered the "paragraph B" criteria, rating Plant in four broad areas of functioning, and finding she had a mild limitation in all four areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. Since Plant was not markedly limited in two of these areas, or extremely limited in one area, the "paragraph B" criteria were not satisfied.

The ALJ found Plant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ specifically noted that no treating or examining physician had mentioned findings equivalent in severity to the criteria

of any listed impairment.

The ALJ determined that Plant had the RFC to perform sedentary work with the following limitations:  can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs, balance, kneel, stoop, crouch and crawl; must avoid more than occasional exposure to atmospheric conditions and hazards as defined by the *Selected Characteristics of Occupations*; can occasionally reach overhead with her bilateral upper extremities and frequently handle and finger with the right upper extremity; must be able to wear protective undergarments and must work in a facility with ready access to a bathroom; and will require two extra unscheduled five-minute bathroom breaks during each workday.  This RFC assessment mirrored the second hypothetical question posed to Stinson.

The ALJ opined that Plant's impairments could reasonably be expected to cause her alleged symptoms.  However, the ALJ found Plant's statements about the intensity, persistence and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 21).

The ALJ thoroughly reviewed the testimony of Plant and the medical evidence, beginning with hysterectomy surgery in December 2015.  Complications from this surgery caused Plant to undergo two additional surgeries, including one in

January 2016 to repair a vesicovaginal fistula.[1]  The ALJ noted medical reports showing no fistula at a February appointment, leakage and spasms in May, and improvement in September but with recurring symptoms after heavy lifting.  In February 2017, a cystoscopy revealed a possible pinhole opening in the bladder, and Plant reported leakage and increased pain.  A March 31, 2017 cystoscopy showed no vesicovaginal fistula.  A follow-up examination in Augsut 2017 showed no fistula, and the persistent urinary incontinence was treated with Myrbetriq and Oxybutynin.

In late 2016 Plant was seen for neck problems and had an anterior cervical fusion and discectomy in November.  A February 2017 MRI showed multilevel discogenic degenerative changes and postsurgical changes at C5-C6.  A June 2017 MRI showed post-surgical changes at C5-C6 and no definite disc herniations.

In February 2018, Plant was seen for chronic back, neck, right arm and abdomen pain and migraine headaches occurring more than fifteen days per month. She was prescribed Gabapentin, Soma, and tramadol, and reported two months later that the migraines had decreased by more than 50%.

A cervical spine MRI in May 2018 showed minimal disc bulging at the levels above and below the fusion, and a lumbar spine MRI showed a small left lateral disc

---

[1] The Cleveland Clinic defines vesicovaginal fistula as a small hole that develops between the bladder and the wall of the vagina, which may cause urine leakage. www.myclevelandclinic.org.health/diseases/16442-vesicovaginal-fistula.

herniation at L4-5.  In June, Plant received lumbar medial branch blocks.  In August 2018, Plant was seen for back pain; the treating physician reported "claimant was pushing pretty hard for hydrocodone."  (ALJ at Tr. 22, citing Dr. Janet Corbett,[2] at Tr. 644).

In October 2018, Plant was seen for a mental and physical examination at the prison medical center where she was incarcerated.  Mentally, no abnormal thoughts were noted, and the physical exam was unremarkable.  Anxiety and dysphoric mood were noted in a May 2019 mental status evaluation.  In June of that year she reported improvement with Gabapentin, and her physical exam showed full range of motion with no pain.  An October stress test was unremarkable with tachycardia, hypertension and history of hypokalemia managed with medication.  Later in October, Plant complained of urinary incontinence and in November she was seen by a urologist.  Plant told the physician she had leaks with stress caused by stairs or coughing, also had bladder spasms and right groin pain, and had responded well to Myrbetriq and Levsin.

In December 2021, Plant began treatment with a new provider, complaining of migraine headaches.  Her physical examination reflected no distress, her mood was normal, as were her muscle tone, strength, gait, and movement in her

---

[2] Dr. Corbett also discussed Plant's "gradual accumulation of medication prescriptions over the past 3 years" at the August 2018 appointment.  (Tr. 644).

extremities.  She was prescribed Nurtec for migraine headaches.  At a follow-up appointment in March of 2022, her physical exam was unremarkable and she reported she was still dealing with break-through migraines.

A May 2022 pulmonary function test resulted in a diagnosis of asthma, which was treated with Breo 200, montelukast and Albuterol.  Physical exam was unremarkable, and she was noted to be back to full activity.  (Tr. 3135).  Plant was also seen in May for her overactive bladder, noting that she still had leakage and bladder spasms.  The medication (Mybertriq) was reported as helpful.  Late in May, she presented at pain management for migraines and back pain.  She received pain mediation, joint injections, and Botox injections.  In August, she estimated her pain to average 5 out of 10.

In September 2022, Dr. Anthony Davis ("Davis") saw Plant for memory loss.  Her EEG was normal.  Seen again by Davis in November, Plant complained of cognitive problems and right foot numbness.  Davis found no obvious weakness in Plaint's right foot and described her memory loss as subjective.

Plant had recurring urinary tract infections (two since her last visit) when she was seen in November for her overactive bladder.  Her fistula was noted as repaired and stable.  In February 2023, she was seen for a worsening urinary tract infection, causing her overactive bladder symptoms to worsen.

In March 2023, Plant returned for a follow-up for her pulmonary issues. She had improvement in her cough, had lost sixty pounds, and no changes in her management were warranted.

A lumbar spine MRI in March reflected mild degenerative disc and joint findings, and mild clumping cauda equina. The test results were reviewed at an April appointment, where the small herniated pulposus was not appearing to cause severe impingement. Physical exam showed normal muscle tone, 5/5 strength, normal tend reflexes, and no gait abnormalities. Plant was prescribed a brace and a walking cane. An EMG study showed nerve compression at the left knee and normal nerve conduction velocity in the right knee.

In May 2023, Plant was seen for the recurring urinary tract infections. Her infection was stable and she complained of bladder pain.

Plant was administered additional injections for back pain and reported marked improvement in her pain in June 2023.

In August 2023, Plant presented for an annual exam, reporting no problems with activities of daily living. She indicated she exercised regularly and her physical exam was unremarkable.

In October 2023, her overactive bladder issues were addressed by a cystocscopy and Botox injections. A urology exam showed no fistula and improved

bladder with the Botox treatment.  She reported continued pain with urinating.

In March of 2024, Plant returned to Davis complaining of forgetfulness, brain fog and memory loss, along with cognitive decline following each of her COVID infections.  She reported symptoms of long COVID such as chronic fatigue, increased pain, and worsening brain fog.  Davis referred Plant to a clinic treating long COVID and opined she did not have degenerative dementia.

In April 2024, Plant was diagnosed with moderate persistent asthma.  She moved her extremities well with no edema and no deformities.

A May 2024 lumbar spine MRI revealed multilevel degenerative disc disease, with moderate bilateral foraminal stenoses at L4-5, mild right foraminal stenoses at L3-4, and mild central canal stenoses at L3-4 and L4-5.

After reviewing the medical evidence, the ALJ considered the 2024 medical source statement of APRN Cindy Burnett ("Burnett").  (See Tr. 3279-3280).  The ALJ deemed most of Burnett's opinions persuasive.  The ALJ, citing the absence of treating medical providers on the issue, found no support for Burnett's opinion that Plant was limited to sitting for only three hours in a workday.

The ALJ considered the RFC conclusions of the state agency medical examiners, deeming the physical RFC assessments persuasive and supported as well as consistent with the record.  The ALJ, noting additional medical records submitted

12

at the hearing level, found additional limitations were warranted, such as access to a

bathroom and additional breaks. The ALJ found the state agency mental RFC

determinations were not persuasive, observing that Plant had not sought or received

mental health treatment.

The ALJ summarized the RFC assessment:

Overall, the undersigned finds that the record supports a sedentary
exertional level with the additional limitations noted above. Despite
allegations of persistent, severe pain, the records set out above,
routinely note no acute distress and the physical examinations were
routinely unremarkable. Following her second anterior cervical fusion
and discectomy, an MRI in June of 2017 revealed no abnormalities.
While the claimant has undergone numerous surgeries following her
2015 hysterectomy, cystoscopies showed no evidence of fistulas. She
was started on medication for her overactive bladder and in November
of 2019, May of 2022 and November of 2022, she reported the
medications were beneficial. She noted that her leaks occurred when
her bladder was more than half full and she had to cough or navigate
stairs. At an October 2023 appointment, the claimant state that the
Botox injections also helped her bladder spasms. Exams revealed pain
with palpitation of the claimant's spine, trigger points and pain with
range of motion. She was treated successfully with injections and
radiofrequency ablation as well as medications. March 2023 and May
2024 lumbar spine MRIs revealed mild degenerative disc disease.
Further, the claimant has not required emergency care during the period
under consideration. The claimant is able to independently manage
activities of daily living including driving, preparing meals, shopping
in stores and performing household chores. However, in consideration
of the allegations and objective medical evidence such as claimant's
overactive bladder symptoms, cervical spine surgery, abnormal
findings on MRIs, decreased sensation in the bilateral lower
extremities, loss of grip strength due to radiculopathy and mild
obstruction found on pulmonary function tests, accommodations such
as postural, environmental and manipulative limitations as well as extra
breaks and access to a restroom have been assigned to the residual

functional capacity. Based on the record, a sedentary exertional level with these additional limitations is consistent with the evidence. While there is evidence of treatment for denervation of the knee and post COVID symptoms, the residual functional capacity includes restrictions that adequately account for the limitations. Allegations of greater restrictions are not consistent with the record which includes reports of symptoms improvement with medication and surgery. Further, the evidence shows that the claimant is able to manage her activities of daily living which is inconsistent with the intensity, persistence and functional limitations alleged by the claimant.

(Tr. 28-29).

Relying upon Stinson's expert testimony, the ALJ concluded that there were jobs which Plant could perform, and she was not disabled. (Tr. 15-31).

*Claim One – ALJ failed to evaluate her migraine headaches and left femoral nerve compression impairments*

Plant correctly observes that the ALJ's list of severe impairments did not include migraine headaches and left femoral nerve compression. Plant contends the ALJ disregard of these impairments "entirely without explanation" warrants remand. Doc. No. 9, page 3. This contention is without merit.

Regarding migraine headaches, the ALJ summarized the medical treatment received by Plant. The ALJ cited treatment in February and March 2018, December 2021, and March and May 2022.

The ALJ also found the opinions of the state agency physicians on Plant's physical RFC persuasive. The opinion of Dr. Lucy Sauer ("Sauer") records Plant's

14

"Allegations of Impairments" as pinched nerve in left knee, foot issues, low back pain, joint pain, radiculopathy, neck pain, covid, memory issues, asthma, vesicovaginal fistula, bladder issues, low blood pressure, and type II diabetes.  (Tr. 70).  While there was no allegation of disabling migraines, Sauer's report includes Plant's treatment for migraines.  (Tr. 73).  On reconsideration Dr. Ken Murphy ("Murphy") recorded essentially the same allegations of impairments and listed five medically determinable impairments experienced by Plant, none of which were migraines. (Tr. 101).

The applications filed by Plant represent that she was disabled as of December 1, 2015, but do not list the disabling impairments.  (Tr. 236, 238).  Her Disability Report lists ten medical conditions, but not migraines, limiting her ability to work. (Tr. 294).  Her Function Report omits any reference to migraines in the section about illnesses, injuries, or conditions limiting her ability to work. (Tr. 320).  In subsequent filings, Plant did not include migraine headaches as a new or updated impairment. (Tr. 331, 336, 347).

At the administrative hearing, Plant identified numerous impairments, singling out bladder problems as the primary barrier to employment. (Tr. 44).  She did not mention migraine headaches when describing her impairments.  At the close

15

of her questioning by her attorney,[3] he asked, "Kristen, is there anything else you'd like to add or something we did not cover?" She responded, "No, sir." (Tr. 53-54). After Stinson's testimony the ALJ asked Plant if there was "anything that we haven't talked about that you would like to share with me before I conclude the hearing today?" (Tr. 65). Plant responded with additional testimony about her bladder issues.

In summary, no error was committed by the ALJ regarding migraine headaches because Plant did not allege them to be disabling, either on her applications, her other documentation, or at the administrative hearing. The ALJ was on notice to consider numerous allegations of disabling impairments, but migraine headaches were not on that list.[4]

Unlike her migraine headaches, Plant testified to nerve problems radiating from her hip in both legs, worse in her left leg. Those problems cause numbness, which Plant addresses by stretching and walking. (Tr. 51). Plant stated she experienced nerve problems when sitting in a kitchen or office chair but not when driving. *Id.* The ALJ cited Plant's testimony, "She has nerve pain from her hip to

---

[3] Plant's current attorney also represented her at the administrative hearing.

[4] The Commissioner attributes the omission of migraines and left femoral nerve compression to "scrivener's errors" in the ALJ's decision. Doc. No. 13, page 8. These omissions, however, are not comparable to a simple typo, and the undersigned does not base this ruling on the "scrivener error" argument.

her leg." (Tr. 20). In her summary of the medical records, the ALJ noted Plant reported a new onset of right foot numbness in November 2022. Also, an April 2023 nerve conduction study reflected normal readings on the lower right extremity but acute denervation in the peroneal nerve below the left knee. (Tr. 428). The ALJ considered Plant's statements and her function reports about the limiting effects of her symptoms, including statements concerning leg nerve problems, and found them inconsistent with her daily activities. The state agency physicians considered Plant's allegations of left leg pain when reaching their RFC determination that she could perform sedentary work. This ALJ's RFC (sedentary work with prohibitions on climbing and restrictions on other postural requirements) was more restrictive than that of the state agency physicians. While Plant views the evidence of nerve issues with her left leg as more limiting than assessed by the ALJ, the Court's role is not to re-weigh the evidence but to consider if substantial evidence supports the ALJ's decision. It does.

*Claim Two – the ALJ failed to properly evaluate the agency physicians' opinions regarding mental impairments*

At Step 2 of the sequential evaluation, the ALJ found Plant's mental impairment of anxiety caused no more than minimal limitation in her ability to perform basic mental work activities. Therefore, the impairment was deemed non-severe. The ALJ analyzed the "paragraph B" criteria in reaching her result, finding

Plant had mild limitations in all four broad functional areas of mental functioning. (Tr. 18).

The state agency physicians, Sauer and Dr. Kay Cogbill ("Cogbill"), opined Plant had the following mental limitations on work she could perform – she could perform work where interpersonal contact was routine but superficial, the complexity of tasks was to be learned by experience, with several variables, judgment within limits, and where supervision was little for routine tasks but detailed for non-routine.  Cogbill also observed that Plant "does not receive a level of collateral support or mental health treatment that is usually associated with chronic or debilitating mental illness."  (T. 850).  The ALJ differed with Sauer and Cogbill, finding their mental RFC determinations "not persuasive.  There is no record that claimant has sought or received mental health treatment.  Her mental symptoms appeared to be due to the claimant's physical impairments, and not ongoing mental health problems."  (Tr. 28).

There is no error in the ALJ's mental RFC determination.  The ALJ's discussion of the "paragraph B" criteria at Step 2 are detailed, with citations supporting the mild mental limitations of Plant in all four functional areas.

The ALJ's recitation of Plant's medical history included her allegations of depression and anxiety in October 2018, an anxious affect and dysphoric mood in

18

May 2019, and an anxious mood in September 2019.  The ALJ also cited Plant's normal mood in December 2021 and her annual examination in August 2023 where she reported the following:  doing well, exercising regularly, "never feels sad, empty or tearful; no loss of interest in activities . . . no agitation . . . no history of depression; no history of mood disorders."  (Tr. 1082).  When seen in March 2024 for forgetfulness, brain fog, and memory loss, the treating physician (Davis) indicated he did not believe Plant had degenerative dementia and referred her for long COVID treatment, noting her four COVID infections.  Plant reported sleep problems, depression, and anxiety to Davis, and denied suicidal thoughts and hallucinations. (Tr. 2681).

The Step 2 analysis and the review of the medical evidence, along with the ALJ's consideration of Plant's subjective statements, all support the ALJ's mental RFC finding.  The ALJ may be faulted for the wording of one statement – the ALJ wrote "there is no record that the claimant has sought or received mental health treatment."  The record shows Plant received occasional mental health care, though not from a mental healthcare specialist.  This misstatement does not render the thorough analysis in error.

*Claim three – the ALJ failed to properly evaluate her severe impairments of bladder spasms and vesicovaginal fistula*

19

Plant concedes the ALJ deemed her bladder spasms and vesicovaginal fistula severe impairments but contends error occurred because she testified to needing longer bathroom breaks, more bathroom breaks, extended sitting periods, limitations on lifting, and the need to lie down.  According to Plant the RFC omitting these restrictions was erroneous.  This is a straightforward challenge to the ALJ's finding that Plant's subjective statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical and other evidence in the record.

Substantial evidence supports the ALJ's consideration of these severe impairments, including the ALJ's consideration of the testimony of Plant.  The ALJ cited Plant's activities of daily living, the medical evidence, and the opinions of the state agency physicians in reaching her conclusion.  The ALJ properly considered these appropriate factors and was entitled to find as she did.  The issue is not whether Plant disagreed with the ALJ's weighing of her subjective statements.  Rather, the issue is whether substantial evidence supports the ALJ's assessment.  It does.  Substantial evidence may exist "even if inconsistent conclusions may be draw from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607 (8th Cir. 2010).  *See also Smith v. Bisignano*, 2025 WL 1746868 (E.D. Ark. June 24, 2025) ("substantial" evidence in administrative decisions is not a high standard, amounting to "more than a scintilla").

In summary, substantial evidence supports the determinations reached by the

ALJ.  The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion.  The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plant's complaint is dismissed with prejudice.

IT IS SO ORDERED this 2nd day of June, 2026.

_____
UNITED STATES MAGISTRATE JUDGE